Filed 8/17/22  Sierra Club v. County of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>COUNTY OF SAN DIEGO,<br><br>　　Defendant,<br><br><br>RCS-HARMONY PARTNERS, LLC<br><br>　　Real Party in Interest and Appellant. | D079518<br><br><br><br>(Super. Ct. No. 37-2018-00043084-CU-TT-CTL) |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Richard A. Schulman and Richard A. Schulman for Real Party in Interest and Appellant.

Chatten-Brown, Carstens & Minteer and Josh Chatten-Brown and Kathryn Pettit for Respondent.

Appellant and real party in interest RCS-Harmony Partners, LLC (Harmony) appeals a postjudgment order awarding plaintiff and respondent Sierra Club $468,228.73 in Code of Civil Procedure[1] section 1021.5 private attorney general fees for Sierra Club's successful petition for a writ of mandate directing the County of San Diego (County) to vacate and set aside its certification of an environmental impact report and approval for two development projects: Harmony Grove Village South and Valiano.[2]  The trial court included a .5 multiplier for Sierra Club taking the case on a contingency basis.  Harmony contends the court abused its discretion in making this award, claiming there is no evidence that Sierra Club enforced an important right, conferred a significant benefit, or had any need to file its action as section 1021.5 requires, and Sierra Club lost on two of its three causes of action.  More specifically, Harmony contends that because another party in a related lawsuit obtained the same relief days before Sierra Club obtained its judgment, Sierra Club's case "accomplished *literally nothing*."  Harmony further contends the court erred because it did not consider the litigation's harm in delaying needed housing when considering Sierra Club's entitlement to fees and whether to apply a diminishing multiplier.  We affirm the postjudgment order.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     The award consists of $436,862.25 in fees on the merits and fees of $26,114.50 in making the attorney fee motion.  The award also includes $5,251.98 in costs that Harmony did not contest, making the total award $468,228.73.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2018, Sierra Club filed a lawsuit against County seeking, among other relief, a petition for writ of mandate to rescind and set aside County's approval of three development projects—Harmony Grove Village South (Harmony Grove), Valiano and Otay 250—until County complied with the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). Sierra Club also sought a writ to command County to stop its policy of automatically deleting documents that CEQA required to be included in an administrative record. Sierra Club alleged the projects would create new greenhouse gas emissions that were not adequately analyzed and mitigated in the projects' environmental impact reports (EIRs), in part because the projects mitigated such emissions by obtaining offsite greenhouse gas offsets from anywhere in the world. Sierra Club further alleged County was improperly "batching" general plan amendments to avoid limits on the number of such amendments it could adopt in any one year. The complaint and petition contained three causes of action: for CEQA violations with respect to greenhouse gas mitigation; for CEQA violations with respect to County's failure to preserve documents; and declaratory relief with respect to County's batching of general plan amendments. Sierra Club eventually filed a second amended petition containing the same causes of action, now alleging in support of its request for declaratory relief that County had approved an additional general plan amendment for a "Newland Sierra" project, exceeding Government Code limits for such actions.

3

The next day, the Elfin Forest Harmony Grove Town Council (the Town Council) filed its own lawsuits separately challenging the Harmony Grove and Valiano project approvals. Sierra Club filed a notice of related cases to alert the superior court to the Town Council's cases, as well as the fact Sierra Club had filed prior actions against County raising related issues. The superior court ruled the cases were related. The parties eventually stipulated that the Town Council cases would be heard on the merits before Sierra Club's case.

Sierra Club eventually settled with the Otay 250 project developer (Sunroad Otay Partners LP). The settlement agreement required onsite greenhouse gas mitigation to be conducted "to the maximum extent feasible" before offsite mitigation. It delineated minimum conditions for onsite mitigation, including things such as electric vehicle parking and bicycle lanes, and required the developer to provide any offsite mitigation within San Diego County. The developer agreed to pay Sierra Club's litigation costs and fees.[3]

The court heard the Town Council cases in January 2020, and issued a minute order the following month on February 20, 2020. In that case, the

---

[3]    In the factual background section of its opening brief, Harmony points to this settlement to assert some of its features undermine Sierra Club's claim to be enforcing a public right. It further argues "[t]he primary purpose of the settlement appears to have been Otay's promise to pay a share of [Sierra Club's] attorneys' fees . . . in an amount which appears to have reached six figures." We disregard arguments made without proper headings or legal analysis. (*Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, 1143; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482.) Harmony does not claim that any of Sierra Club's requested fees somehow overlapped with the fees paid by the settling defendant.

court eventually issued a peremptory writ of mandate directing County to set aside all project approvals related to the Harmony Grove project and to set aside its EIR's certification.

The court took Sierra Club's matter under submission on February 21, 2020, and issued its ruling in April 2020, granting Sierra Club's petition and directing County to set aside its approvals of both the Harmony Grove and Valiano projects.

In its April 2020 ruling, the court acknowledged that in addressing Sierra Club's petition, it had also considered the Town Council petitions relating to the Harmony Grove and Valiano projects. It agreed with Sierra Club's argument that the greenhouse gas mitigation offset mechanism violated CEQA because it contradicted County's 2018 General Plan and was unenforceable because it impermissibly relied on the planning department director's discretion. The court incorporated its discussion of greenhouse gas mitigation in Town Council's Valiano case and its climate change discussion in Town Council's Harmony Grove case, and found the EIR relied on unsupported greenhouse gas mitigation measures and the projects violated CEQA because the mitigation measures were inconsistent with County's general plan and failed to comply with CEQA's standards for ensuring the mitigation is fully enforceable. As for Sierra Club's request for declaratory relief, the court exercised its discretion to deny the request, finding declaratory relief would have no effect on the projects. Further, though the court acknowledged County's document retention policy deleted emails after 60 days, it found that policy did not warrant setting aside the project approvals in part because Sierra Club had not shown the records for the Harmony Grove and Valiano projects had surprisingly few emails, and thus Sierra Club had not shown prejudice.

In December 2020, Sierra Club moved for $474,784.48 in attorney fees and costs. The request included amounts incurred for securing the fees. Sierra Club argued the case met section 1021.5's criteria; that it was successful on a significant issue and achieved its primary objective to set aside and vacate the project approvals for their CEQA violations. It argued the action resulted in the enforcement of CEQA's environmental reporting requirements for mitigation measures and general plan inconsistencies, and "compliance with the EIR process, particularly the mitigation measures analysis, is a fundamental part of CEQA and constitutes an important right affecting the public interest." It argued the result conferred a significant benefit to San Diego County residents and the general public, as it furthered the enforcement of CEQA's information disclosure and environmental protection measures. Citing *Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260, 291, Sierra Club argued "[l]itigation challenging an agency's compliance with CEQA 'results in the enforcement of important, and public interest laws and confers a significant benefit on the public.' " It stated private enforcement was necessary as County assertedly "has demonstrated its refusal to comply with CEQA and its [greenhouse gas] reduction obligations through its numerous failures to do so." Sierra Club pointed out it was a nonprofit organization dedicated to environmental protection, brought the litigation to benefit the public, and received no financial benefit from it, demonstrating its cost of litigation far transcended its personal interest. It argued the amount of requested fees was reasonable, stating, "While the Court declined to decide the merits of [Sierra Club's] batching argument, and disagreed with [its] claim regarding the County's auto-deletion policy, the Court's ruling resulted in the setting aside of the project approvals." Sierra Club argued it was thus entitled to "full compensation for

6

all legal theories." It also argued the lodestar should be enhanced by a .5 multiplier[4] on grounds its counsel represented it on a fully contingent basis, the fee award was uncertain due to the complexity and difficulty of legal issues, counsel had to forego other compensated employment to litigate the case, and Sierra Club achieved excellent results greatly benefitting the public.

In June 2020, while Sierra Club's fee motion was pending, this court decided *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467 (*Golden Door II*), in which this court found a similar carbon-offset mitigation measure for County's climate action plan violated CEQA because it contained unenforceable performance standards and improperly deferred and delegated mitigation. (*Id.* at pp. 482–483.) The following month, the court entered judgment in the Town Council case. About a week later, the court entered judgment in the present action in Sierra Club's favor.

Harmony opposed Sierra Club's attorney fee motion in April 2021. It argued the Sierra Club case accomplished "*literally nothing,*" as the earlier-decided Town Council cases independently gained the public benefit and rendered moot the court's ruling on the CEQA issue on which Sierra Club had prevailed. It argued that even if the case had accomplished some benefit, the court would have to balance it against the harm the lawsuit caused to California's housing goals, which outweighed any of the lawsuit's social

---

4      The lodestar is the number of hours reasonably expended multiplied by the reasonable hourly rate. (*Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 357.) A "fee enhancement" or "multiplier" is a method by which the court in its discretion will adjust the lodestar up or down. (*Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 247–248; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) "The trial court is neither foreclosed from, nor required to, award a multiplier." (*Mikhaeilpoor*, at p. 247.)

benefit. Harmony asserted the harm was evidenced in part by an executive order addressing California's housing crisis, of which it sought judicial notice under Evidence Code section 452, subdivision (b). Harmony pointed out the court entered judgment in Sierra Club's case after the Town Council's cases. It also asserted that Sierra Club had lost on its second and third causes of action regarding County's document retention policy and general plan amendments, stating they were separate from the CEQA claim and that Sierra Club should be denied compensation for that work. It argued Sierra Club's fee demand reflected unreasonable and unnecessary billing for the remedy it obtained, and the court should apply a diminishing multiplier.

The trial court granted Sierra Club's attorney fee motion in part. Pointing out judgment was entered on Sierra Club's petition in its favor and against Harmony, it ruled that under section 1021.5, Sierra Club was the successful party. It found the action "affected the public interest of ensuring full disclosure and mitigation of significant environmental impacts by requiring the approval of the Harmony Grove South and Valiano projects be set aside until in compliance with CEQA requirements, and which benefitted the general public/large class of persons by addressing greenhouse gas emissions issues." The court ruled the financial burden of private enforcement made the award appropriate in light of Sierra Club's prior administrative efforts and its nonprofit status. The court ruled that the decision in the related Town Council cases did not moot the need to adjudicate Sierra Club's case, though it guided the rationale. It denied Harmony's request for judicial notice of the Governor's executive order as not satisfying the requirements of Evidence Code section 452, subdivision (b). The court pointed out in any event that Harmony did not cite authority to

8

support the proposition that housing delay considerations should be weighed when determining whether fees should be awarded in a CEQA case.

As for the amount of fees, the court stated: "[Sierra Club] claims approximately 699 hours reasonably spent on this matter, minus one-third of the costs up to the date Sunroad Otay Partners LP was dismissed from the action (since Sunroad already paid one-third of those fees and costs incurred with a 10 [percent] reduction)." It adjusted the attorney lodestar hourly rate from $925 to $775, but found Harmony did not show any of the claimed hours were excessive. The court stated Harmony did not identify any specific portions of time as excessive, or provide specific citations showing Sierra Club's collaboration with other petitioners was unreasonably duplicative. It ruled Harmony did not provide adequate explanation but only summary conclusions in attempting to show Sierra Club's work was "merely a cut and paste." Finally, finding Sierra Club took the risk of undertaking the case on a full contingency, the court enhanced the lodestar by a .5 multiplier, calculating fees at $443,418 ($295,612 + 0.5 multiplier = $443,418). The court observed that Harmony did not dispute Sierra Club's $26,114.50 in fees for securing compensation and $5,251.98 in costs, and granted those requests.

Harmony timely appealed the postjudgment order.

### DISCUSSION

#### I. *Legal Principles and Standard of Review*

Section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of

9

persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

By its terms, "[s]ection 1021.5 permits a trial court to award attorney's fees to a successful party in any action that '(1) enforced an important public right, (2) conferred a significant public benefit, and (3) is of a type that private enforcement was necessary, and the financial burden justifies subsidizing the successful party's attorneys.' [Citations.] 'Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees to a party that meets the statutory requirements of section 1021.5 is limited. [Citation.] Unless special circumstances would render an award of section 1021.5 fees *unjust*, fees must be awarded under the statute where the statutory criteria are met.' " (*Burgess v. Coronado Unified School District* (2020) 59 Cal.App.5th 1, 7.)

We review a court's award of attorney fees after trial for abuse of discretion. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213; *Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 708.) De novo review is warranted where issues present a matter of statutory construction or a question of law. (*Conservatorship of Whitley*, at pp. 1213–1214.) Under the abuse of discretion standard, we uphold the court's decision if any reasonable judge would have made it, even if we would not have reached the same conclusion. (See *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 428.) We affirm the order if it is correct on any theory apparent from the record. (*Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 162; *RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th

10

768, 776 [appellate court "will affirm an order correct in theory, even where the court's reasoning is erroneous"].) We presume the court properly applied the law and acted within its discretion unless Harmony affirmatively shows otherwise. (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 379; see also *Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488 [" 'Fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award' "].)

## II. *Harmony's Arguments Do Not Establish the Court Abused its Discretion in Awarding Section 1021.5 Fees*

We turn to Harmony's arguments as to whether Sierra Club met the requirements of section 1021.5, namely whether Sierra Club's lawsuit enforced an important right or conferred a significant benefit, and whether private enforcement was necessary. Notably, Harmony does not challenge the court's finding that Sierra Club was a "successful party" in the action for purposes of *entitlement* to fees under section 1021.5.[5] It cannot do so. By prevailing on its CEQA cause of action relating to greenhouse gas mitigation, that is, obtaining the court's determination that the EIR was insufficient and the projects violated CEQA, Sierra Club succeeded on a significant issue that " ' "achieve[d] some of the benefit [it] sought in bringing suit." ' " (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 982.) This entitled it to prevailing party status. (*Ibid.*)

Harmony's appellate arguments focus on the sequence of the related Town Council litigation and the fact Sierra Club went to trial and obtained its judgment *after* Town Council had its trial and obtained a judgment in its

---

[5] Harmony's later argument about Sierra Club's limited or partial success on its claims is a challenge to the *amount* of fees awarded.

11

case against County.[6]  It argues Sierra Club's case "broke no new ground," pointing out the court in its ruling on Sierra Club's petition incorporated portions of its decision in the Town Council cases.  Harmony asserts that as a result, there is no evidence to support the trial court's determinations that Sierra Club's case enforced an important right affecting the public interest, or conferred a significant benefit, or was a type such that private enforcement was necessary.

As we have stated, it is Harmony's burden to demonstrate error. (*Laffitte v. Robert Half Internat. Inc.*, *supra*, 1 Cal.5th 480, 488; *Central Delta Water Agency v. Department of Water Resources* (2021) 69 Cal.App.5th 170, 212.)  Harmony's arguments do not establish an abuse of discretion.  To determine whether such an abuse of discretion occurred, "we must review the entire record, paying particular attention to the court's stated reasons and whether it applied the proper standards of law in reaching its decision." [Citation.]  ' "We accept the trial court's resolution of credibility and conflicting substantial evidence, and its choice of possible reasonable inferences that can be drawn from the evidence." [Citation.]' [Citation.]

---

6      On appeal, Harmony asks us to take judicial notice of the appellate oral argument schedules for both the Town Council and Sierra Club actions (*Elfin Forest Harmony Grove Town Council et al., v. RCS-Harmony Partners* (Oct. 14, 2021, D077611) [nonpub. opn.].) and *Sierra Club v. County of San Diego et al.* (Dec. 21, 2021, D077548, D077972) [nonpub. opn.].) as well as our unpublished opinion in the Town Council matter, none of which were before the trial court when it made its ruling.  As for relevance, Harmony points out it asserts on appeal that the "substantive actions in this case . . . followed the analogous actions in the related . . . case," but that the "sequence of the appeals" is not in the appellate record.  We disagree these items and/or the sequence reflected in them are relevant to our analysis, and on that ground deny the request.  (Cf. *Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1223, fn. 3.)

12

[¶] [W]e will find an abuse of discretion if the trial court based its decision on improper criteria or an incorrect legal standard, or if factual findings critical to the decision are not supported by substantial evidence.  [Citations.]  To be ' "substantial," ' evidence must be reasonable, credible, and of solid value.  [Citation.]  A finding is not supported by substantial evidence if there is no reasonable basis for it in the record." (*Department of Water Resources Environmental Impact Cases* (2022) 79 Cal.App.5th 556, 573.)

Harmony's legal and factual arguments are cursory and unavailing.  In arguing Sierra Club's action did not enforce an important right, Harmony cites *Ketchum v. Moses* (2001) 24 Cal.4th 1122 for the proposition that "[m]any published opinions have held that duplication merits no compensation."  It makes this bare assertion:  "[Harmony Grove] will be the same with or without this case, except of course for the fees of Plaintiff's attorneys.  [Greenhouse gas] emissions will be the same with or without this case."  In arguing Sierra Club did not confer a significant benefit, Harmony again states  the result had already been gained, and asserts "no evidence, much less substantial evidence, supports this element."  It cites a snippet from *Burgess v. Coronado Unified School District, supra*, 59 Cal.App.5th 1, in which this court cautioned against granting section 1021.5 attorney fees for parties who intervene in or initiate litigation "under the guise of benefiting the public interest while actually performing duplicative, unnecessary, and

valueless services . . . ." (*Id*. at p. 11.)[7]  As to necessity, Harmony reiterates "this case was unnecessary because the result had already been gained in other cases."  It cites *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43 (which in turn cites other cases) for the proposition that if a plaintiff and intervenor seek section 1021.5 attorney fees for time spent that is superfluous or duplicative of each other's efforts, a court may reduce or deny altogether a particular fee request.  (*Id*. at p. 89.)  It cites inapposite cases involving companion lawsuits by public entities rendering private enforcement duplicative or cumulative.[8]  Harmony argues the trial court in

---

[7]  In *Burgess*, this court affirmed a trial court's decision to deny attorney fees to an intervenor who failed to secure a significant public benefit in that its action resulted in the release of de minimis records, including publicly available court filings.  (*Burgess v. Coronado Unified School District*, *supra*, 59 Cal.App.5th at p. 11.)  We held the lower court reasonably found intervention led to the release of only insignificant, insubstantial records that did not warrant a fee award.  (*Ibid*.)  Here, the trial court found Sierra Club's action to enforce CEQA requirements as to mitigation of significant environmental impacts *did* confer a significant public benefit, and we presume the correctness of its finding absent Harmony's showing it lacks substantial evidence in the record.  Harmony's reliance on the mere timing of the Town Council and Sierra Club actions do not make out such a showing.

[8]  In *San Diego Municipal Employees Association v. City of San Diego* (2016) 244 Cal.App.4th 906, the lower court denied a request for fees, finding a union's involvement in an action was not necessary to the final outcome or that its enforcement was necessary.  (*Id*. at p. 912.)  This court affirmed, pointing out the private union had "litigated [the] case on the same side as a nonvolunteer public entity" and thus was required to show its participation was material in that it proffered significant factual and legal theories, and produced substantial, material evidence that was not merely duplicative of or cumulative to what was advanced by the governmental agency.  (*Id*. at

14

this case focused only on whether Harmony was required to defend the case, and asserts: "Defending this case was necessary because it had been filed. That does not mean that its filing was necessary, nor does it mean that its filing must be rewarded. Again, no evidence, much less substantial evidence, supports the fee award." Such broad and bare assertions do not meet Harmony's appellate burden to establish error.

Harmony fails to acknowledge that Sierra Club initiated its litigation before Town Council, and that the cases effectively proceeded simultaneously, with the court taking Sierra Club's case under submission one day after it issued its minute order in the Town Council cases. The trial court specifically addressed Harmony's contention that Sierra Club's case had not achieved any results and rejected it, stating "the fact that determinations were made in

---

p. 913.) *McGuigan v. City of San Diego* (2010) 183 Cal.App.4th 610 was decided in a "unique procedural context" (*id*. at p. 618) where one settling respondent sought appellate attorney fees from another settling respondent (a city). We held attorney fees were not available as they were not opposing parties, but were allied in interest. (*Ibid*.; see *Animal Protection & Rescue League v. City of San Diego* (2015) 237 Cal.App.4th 99, 109 [discussing *McGuigan*].) *McGuigan*'s discussion of "duplication of effort" was made in the context of determining the necessity of private enforcement, and we determined the appellant did not need to pursue private enforcement of a settlement, as it was essentially acting as a volunteer since the public entity sought the same outcome. (*McGuigan*, at p. 636.) In *Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563, we likewise affirmed the denial of section 1021.5 fees where a private party had filed an "essentially identical" lawsuit to the Coastal Commission to stop demolition of a structure. (*Id*. at p. 568.) The lower court in *Ciani* did not abuse its discretion in finding the dispositive legal issues in the lawsuit and benefits "were fully advanced by the state, rendering [the private party's] participation in the lawsuit unnecessary." (*Id*. at p. 573.) Harmony maintains the point of these cases is that duplicative effort is not rewarded, but as we explain, it fails to appreciate that the "necessity" inquiry focuses on whether there is redundant public enforcement, a circumstance not involved in this case.

other related cases did not moot the need to adjudicate this matter, though they did guide the Court's rationale." The trial court thus implicitly, if not expressly, found Sierra Club's efforts did not merely duplicate Town Council's, Sierra Club's case was not identical to Town Council's, and that Sierra Club's private enforcement was necessary. The court expressly found the "financial burden of private enforcement makes the award appropriate, in light of [Sierra Club's] prior administrative efforts and its non-profit status."

Though Harmony has the burden to establish that these findings are erroneous, it has not pointed to evidence or indications in the record suggesting that Sierra Club's action was superfluous, unnecessary or valueless. It has not shown, for example, that Sierra Club's action was merely tag-along, that its and the Town Council's actions were "nearly identical," or that duplication of effort was manifest or a "hallmark" of the proceeding. (Compare *Thayer v. Wells Fargo Bank, N.A.* (2001) 92 Cal.App.4th 819, 840 [duplication of effort was a hallmark of coordinated cases where plaintiff's counsel's time records showed that approximately 20 percent of the hours claimed was spent in correspondence between and among the nine law firms representing the various plaintiffs, more than twice the hours spent by plaintiffs' counsel in communicating with the defendant and the trial court, warranting remand for the trial court to consider applying a negative multiplier]; *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1045–1046, 1054–1055 [reversing $16 million award including a 2.0 multiplier, citing *Thayer*'s concern whether it is appropriate to award attorney fees in " ' "tag-along actions—representative lawsuits brought with different named plaintiffs which substantially track actions previously brought" ' " in a case involving 34 putative private class actions and 52 law firms]; but see *State Farm General Insurance Company v. Lara* (2021) 71

16

Cal.App.5th 197, 226 [lower court did not abuse its discretion in rejecting claim of unnecessary duplication by finding briefs were not " 'carbon copies' "].) Harmony does not demonstrate how the record shows inefficiencies in Sierra Club's counsel's actual handling of the action. Its arguments would have us presume based on the mere fact that the court decided the Town Council actions first that Sierra Club's case was cumulative or redundant. " '[G]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.' " (*Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 848.)

Nor has Harmony addressed the relevant considerations for the element of necessity within the meaning of section 1021.5. That element focuses not on mere duplication of effort by prevailing parties, but the need for *private* enforcement. "[T]he necessity . . . of private enforcement" is comprised of two distinct elements: the first "necessity" prong "simply [requires a showing] that public enforcement is not available, or not sufficiently available." (*Conservatorship of Whitley, supra,* 50 Cal.4th at p. 1217; see also *City of Santa Monica v. Stewart, supra,* 126 Cal.App.4th at p. 85 ["the court looks only to whether there is a need for a private attorney general for enforcement purposes, because no public attorney general is available"; where a private suit is brought against a governmental agency that refuses to comply with admitted statutory responsibilities, the necessity of private enforcement is " 'often obvious' "].)

Further, as Sierra Club points out, Harmony's own authority, *City of Santa Monica v. Stewart, supra,* 126 Cal.App.4th 43, establishes that multiple parties acting as private attorneys general, including intervenors, have the right to seek attorney fees under section 1021.5. There, the appellate court rejected an argument that the necessity element of the

17

statute required the court to "weigh[] the relative contributions of each private guardian" in determining their respective entitlement to an attorney fee award. (*Id*. at p. 85.) The court explained the policies underlying the intervention and private attorney general statutes did not support any such conclusion. (*Id*. at p. 87.) In part, it observed "the policy underlying section 1021.5 encourages a party without substantial resources to prosecute actions to vindicate important public constitutional and statutory rights, knowing that if it prevails it will receive financial compensation for its substantial efforts in that endeavor." ( *City of Santa Monica v. Stewart*, at p. 85) Any ruling "condition[ing] an intervenor's entitlement to private attorney general fees on an after-the-fact assessment of whether the intervenor's participation was 'necessary' to the successful result achieved" was inconsistent with those policies. (*Id*. at p. 88.) *Stewart*'s holding was reached in the context of an intervenor; its principles are more compelling in a case involving an original party with full "procedural rights and remedies" to seek attorney fees. (*Id*. at p. 87.) As another court puts it: "[T]he rule derived from *Stewart* is this: If two private parties prosecute important public interest litigation together and obtain the same success, neither party's services can be deemed unnecessary simply because the other party would have succeeded without them." (*State Water Resources Control Bd. Cases* (2008) 161 Cal.App.4th 304, 315; see also *id*. at p. 317 ["If . . . there is no public attorney general available to act, then the 'bounty' that section 1021.5 provides must be available to any party, public or private, who takes on the responsibility of pursuing important public interest litigation beyond its own interests."].)

In sum, Harmony has not convinced us that the trial court abused its discretion in ruling Sierra Club met the requirements of section 1021.5.

## II. *Use of Multiplier*

In applying a 0.5 multiplier to the lodestar, the trial court acknowledged and reiterated Sierra Club's counsel's assertions that the matter involved substantial risk and that it precluded work on other matters. In part it cited *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 899 for the proposition that " '[t]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class.' " Stating "the contingency factor is not reflected in the lodestar," the court applied the multiplier, reasoning Sierra Club "took the risk of undertaking the case on full contingency . . . ."

"The Supreme Court has 'set forth a number of factors the trial court may consider in adjusting the lodestar figure. These include: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and] (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award." ' " (*Mikhaeilpoor v. BMW of North America, LLC, supra,* 48 Cal.App.5th at p. 248; see *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 579.) "This is an illustrative rather than exclusive list of potentially relevant factors." (*Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 880.) " '*[A]ny one* of those factors may be responsible for enhancing or reducing the lodestar.' " (*Center for Biological Diversity v. County of San Bernardino, supra,* 185 Cal.App.4th at p. 901, italics added; see also *Sonoma Land Trust v. Thompson* (2021) 63 Cal.App.5th 978, 986.)

19

"The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.  The " 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " ' " (*Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at p. 579.)

Thus, "[w]e will not disturb the trial court's exercise of discretion in deciding whether to increase or reduce the lodestar figure unless the fee award is clearly wrong [citation], and we may 'presume the trial court considered all the appropriate factors in choosing the multiplier and applying it to the whole lodestar.' " (*Espejo v. The Copley Press, Inc.*, *supra*, 13 Cal.App.5th at pp. 384-385; see also *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1240 [emphasizing that "application of a lodestar multiplier is *discretionary*; that is, it is based on the exercise of the court's discretion after consideration of the relevant factors in a particular case"].)

Harmony contends the trial court abused its discretion by applying the multiplier.  It accepts the court's calculation of the lodestar for purposes of this appeal, but maintains the award is erroneous as it gave Sierra Club a "bonus of 50 [percent] of its fee demand."  According to Harmony, the factors relevant to determine an appropriate multiplier overwhelmingly militate in favor of diminution, stating Sierra Club did not identify any specific or novel issue and all of its authorities already existed except *Golden Door II*, which assertedly arose without any contribution from this case.  Harmony further asserts Sierra Club is represented by a firm with multiple lawyers who file

20

many of these cases, and the court denied the sole practitioner in the Town Council case a multiplier. Harmony repeats that the case "accomplished nothing new of benefit" and created harm to California's housing needs, warranting a zero multiplier.[9]

None of these arguments demonstrate the trial court abused its broad discretion or was " ' " 'clearly wrong' " ' " (*Pellegrino v. Robert Half Internat., Inc., supra*, 182 Cal.App.4th at p. 292) in applying the 0.5 multiplier based on the contingency factor. Harmony mentions nothing about the contingent risk taken on by Sierra Club's counsel, which by itself can warrant an enhancement. (*Center for Biological Diversity v. County of San Bernardino, supra*, 185 Cal.App.4th at p. 901 [plaintiff relied exclusively on contingent nature of litigation and court relied primarily on contingency issue in applying 1.5 multiplier to lodestar]; *Pulliam v. HNL Automotive Inc.* (2021) 60 Cal.App.5th 396, 408-409 [plaintiff solely requested a multiplier for her counsel's contingent risk; appellate court upheld application of 0.2 multiplier to account for inherent risks associated with taking the case on contingency and fronting all costs of litigation].) " ' "[A] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." ' " (*Ketchum v. Moses, supra*, 24 Cal.4th at p. 1132.) We have recognized "it is not unusual for counsel to ask for a multiplier in contingent fee cases" and it is " '[o]ne of the

_____

[9]    Harmony does not claim the court intertwined considerations relevant to the determination of the lodestar amount with factors relevant to whether the lodestar should be adjusted upward. (See *Northwest Energetic Services, LLC v. California Franchise Tax Bd., supra*, 159 Cal.App.4th at p. 879.) Nor did the court apply any enhancement to the request for fees spent on the time pursuing the attorney fee award. (*Pellegrino v. Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 295 [an enhancement for fee-related litigation is " 'rarely justified' "].)

21

most common fee enhancers . . . .' " (*Etcheson v. FCA US LLC*, *supra*, 30 Cal.App.5th at p. 851; see also *Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at p. 579.)[10]  As we have explained above, Harmony has not demonstrated Sierra Club's counsel's hours reflected substantial duplication of effort, as the court found in *Thayer v. Wells Fargo Bank, N.A.*, *supra*, 92 Cal.App.4th at pages 840–841.  We see no relevance that the court denied use of a multiplier in the Town Council case, as Harmony has not established that matter involved a nonprofit public interest group with counsel working on a fully contingent basis as in the present case.  And Harmony's assertion that Sierra Club's law firm brings many of these types of cases does not

---

[10]    In *Graham v. DaimlerChrysler Corp.*, the California Supreme Court reiterated the propriety and economic rationale" of a contingency risk enhancement:  " ' "A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.  The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.'  [Citation.]  'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases." ' " (*Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at pp. 579–580.)

demonstrate that the court's use of a multiplier for contingent risk was unjustified.[11]

## IV. *Partial Success Arguments*

Harmony contends the court further abused its discretion in awarding the entire amount Sierra Club sought given Sierra Club assertedly lost on its second and third causes of action, and thus those causes of action "enforced no public right." It points to cases upholding denial of fees in cases of limited success (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179), and maintains the court in this case "ignored the facts" and failed to apply the proper standards. According to Harmony, the court should have determined whether the relief it granted was related to the failed claims and denied claims for unrelated work, as well as evaluated the

---

[11]   Harmony's record citation for this proposition does not support any suggestion that the issues were routine or not complex, at least for Sierra Club's experienced counsel, so as to weigh against applying a multiplier. Harmony cites Sierra Club's counsel's declaration in the record, in which he states: "I am a partner at Chatten-Brown, Carstens & Minteer . . . , a small, public interest, for-profit law firm. We primarily represent non-profit environmental organizations, community groups, individuals, and occasionally government entities. Non-profit environmental organizations, such as the petitioner in this case, are often unable to pay market rates for legal services due to their limited fundraising capabilities and the high cost of litigation. In order to provide such groups with legal services, our office generally offers services for compensation below our market billing rate, at a reduced rate level negotiated with the clients, with a cap on fees, or sometimes, in cases such as this, on a contingent basis, except for payment of costs. A successful outcome is always uncertain, and so our practice relies on fee awards in successful cases to assist in funding subsequent public interest litigation." Counsel goes on to state in his declaration that his firm "represented . . . Sierra Club on a fully contingent basis in this case" and so as to not take on a higher workload than it could handle, his firm "declined to represent paying clients."

23

significance of the relief and reduced the lodestar if it gave limited relief. Harmony further argues that Sierra Club's second and third causes of action were both "borderline frivolous." It concedes Sierra Club's "time entries . . . were not informative enough to establish quantities for the misdirected effort" but maintains the "broad outlines" of the case show the problem being the two causes of action were "complete failures."

These latter arguments are identical to those Harmony made below in its opposition to Sierra Club's attorney fee motion, which the trial court both expressly and implicitly rejected. (Accord, *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.*, *supra*, 36 Cal.App.5th at p. 996 [by declining to reduce fee award, court impliedly rejected contention that fees should be reduced for unnecessary work by counsel given litigant's limited success].) The trial court in this case expressly ruled that "[g]eneral arguments that fees claimed are excessive, duplicative *or unrelated* do not suffice" (italics added) and that Harmony had the burden, but failed to identify specific excessive hours.

The court's ruling declining to reduce the fee award necessarily implies a finding that Sierra Club's claims were sufficiently related or involved a common core of facts such that apportionment between successful and unsuccessful claims was unwarranted (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.*, *supra*, 36 Cal.App.5th at pp. 996–997) and that its requested 699 hours of time were reasonably expended on the litigation given the relief granted "in comparison to the scope of the litigation as a whole." (*Id*. at p. 997.) " '[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. [Citation.] Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or

24

failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.' " (*Ibid*.) We give "[g]reat deference" to the court's assessment of the amount of attorney fees because of its superior understanding of the litigation. (*San Diego Municipal Employees Association v. City of San Diego*, *supra*, 244 Cal.App.4th at p. 915.)

Harmony's arguments, which fail to acknowledge the trial court's implied findings, do not compel us to disturb the court's exercise of discretion. The court could reasonably conclude Sierra Club's causes of action arose out of common facts, namely, County's approval of the projects, and that Sierra Club's success in achieving its goal of setting aside the project approvals for violating CEQA "in comparison to the scope of the litigation as a whole" warranted fees for all of the requested 699 hours expended by its counsel. Harmony's arguments focusing on the mere success or failure of Sierra Club's claims do not address these considerations. Further, the trial court did not rule on the merits of Sierra Club's request for declaratory relief as to improper batching of general plan amendments (including for Newland Sierra), because the requested judicial declaration would not impact the projects at issue. (Accord, *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.*, *supra*, 36 Cal.App.5th at p. 997 [holding trial court could reasonably conclude school district lawyers reasonably expended all listed hours even where lower court declined to issue requested writ relief on several claims, because court's ruling did not reflect adversely on the merits of those claims].)

We are not persuaded by Harmony's complaint about insufficient detail in Sierra Club's billing records. It suggests *Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282 demonstrates the trial court was wrong in placing the burden on it to identify excessive or unrelated

time because it could not have obtained the necessary information, which remains "confidential" while the case is pending. This argument is an overly broad and unsupported reading of *Los Angeles County*. There, the court made clear that the attorney client privilege "does not categorically shield everything in a billing invoice from . . . disclosure." (*Los Angeles County*, at p. 288; see also *id.* at p. 300 ["the contents of an invoice are privileged only if they either communicate information for the purpose of legal consultation or risk exposing information that was communicated for such a purpose. This latter category includes any invoice that reflects work in active and ongoing litigation"].)[12] Rather, "the privilege turns on content and purpose, not form . . . ." (*Id.* at p. 298.) The *Los Angeles County* case was concerned in part with information contained in billing records related to "active litigation" that could reveal legal strategy, like "[m]idlitigation swings in spending." (*Id.* at p. 297, see also *id.* at p. 298 [billing may communicate privileged information when it "provides . . . insight into litigation strategy or legal consultation" but "there may come a point when this very same information no longer communicates anything privileged . . . ."].)

---

[12]    The Supreme Court stated: "Invoices for legal services are generally not communicated for the purpose of legal consultation. Rather, they are communicated for the purpose of billing the client and, to the extent they have no other purpose or effect, they fall outside the scope of an attorney's professional representation. . . . While invoices may convey some very general information about the process through which a client obtains legal advice, their purpose is to ensure proper payment for services rendered, not to seek or deliver the attorney's legal advice or representation." (*Los Angeles County Board of Supervisors v. Superior Court, supra*, 2 Cal.5th at p. 295.) The court nevertheless recognized that "while billing invoices are generally not 'made for the purpose of . . . legal representation,' the information contained within certain invoices may be within the scope of the privilege." (*Id.* at p. 297.)

26

Setting aside whether this circumstance—an unsuccessful party's challenge to a postjudgment attorney fee award—presents a matter of active or continuing litigation, Harmony fails to point to even a single billing statement that assertedly reflects litigation strategy or consultation. Even if Sierra Club's bills omitted privileged matter, Harmony on appeal "fails to show the redacted bills left [it] unable to challenge the reasonableness of the fees." (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 454.) A bare assertion that time entries were "not informative enough" or "imprecise" is not enough to disturb the trial court's exercise of discretion, or meet Harmony's appellate burden to establish error in this context.

## V. *Balancing of Harms*

Finally, Harmony contends the trial court erred by failing to consider the harm Sierra Club's litigation caused by "delay[ing] for years the construction and occupancy of vitally needed housing" in deciding Sierra Club's basic entitlement to fees or assessing the propriety of a diminishing multiplier. Arguing the question presents an issue of statutory construction, it urges us to disregard or distinguish *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217 (*EPIC*), in which the court rejected a similar argument concerning the balancing of public harms and benefits.

We agree with the observation of the appellate court in *EPIC* that nothing in section 1021.5's text supports the position that asserted harms of an action must be weighed against its benefits: "The statute asks whether the successful party's action has conferred a 'significant benefit' [citation], not, as the Agencies would have it, a "net significant benefit.' " (*EPIC*, *supra*, 190 Cal.App.4th at p. 231.) As in *EPIC*, "[w]e are disinclined to adopt a

construction of the statute that 'neither the context nor the language of section 1021.5 demands.' " (*Ibid.*)

In any event, Harmony did not establish its premise: harm to the provision of housing caused by Sierra Club's litigation.  The trial court denied Harmony's request to take judicial notice of the Governor's executive order on which Harmony relied below in making its assertions of harm.  Harmony continues to cite the executive order on appeal but it does not meaningfully challenge the court's evidentiary ruling.  In a footnote, Harmony acknowledges the trial court "questioned the authenticity" of the executive order, and asserts "neither the content nor the authenticity of this Executive Order should be in dispute."  This sort of cursory argument is insufficient to demonstrate error, particularly as we presume the correctness of the court's ruling.[13]

---

[13]    In its reply brief, Harmony cites to Internet web pages from "email.ojo.com" and the San Diego Union Tribune for the proposition that California has four of the ten least affordable housing areas in the nation. Sierra Club objects to our consideration of these web pages, pointing out Harmony did not request judicial notice of them.  In response, Harmony states the pages are "beside the point" and points to Government Code sections acknowledging California's "critical problem" with the lack of housing, characterizing it as " 'generalized knowledge.' "  We disagree this establishes Sierra Club's litigation obstructed the provision of housing, but even if it did, as stated, the court was not required to balance that harm against the benefit of Sierra Club's litigation in its attorney fees analysis.

## DISPOSITION

The postjudgment order is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J


BUCHANAN, J.